UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| RICHARD MILLER and POWER EQUIPMENT AND DESIGN, LLC | Civil Action No. 3:16-cv-2744 PGS-DEA |
| Plaintiffs, | |
| v. | MEMORANDUM OPINION AND ORDER |
| DAVID RODRIGUEZ, JOELLEN RODRIGUEZ AND CONTACT POWER, INC., | |
| Defendants. | |

ARPERT, United States Magistrate Judge

This matter comes before the Court on a Motion by Defendants to Enforce Compliance With a Confidentiality Order. ECF No. 70. The Nonparty objects of the discovery requests and Confidentiality Order oppose the Motion. ECF No. 73,74. Plaintiffs have taken no position. The Court has fully reviewed the submissions of the Defendants and Nonparties and considers same without oral argument pursuant to Fed.R.Civ.P. 78. For the reasons set forth below, Defendants' Motion is GRANTED.

I. BACKGROUND[1]

The facts of this case are well known to the Parties and were set down at length in the Opinion of this Court denying Defendants' Motion for Leave to File an Amended Counterclaim and Third-Party Complaint. ECF No. 65. Briefly, the facts pertinent and necessary to disposition of the Motion are as follows:

---

[1] The following facts are taken primarily from Mr. Miller's Complaint, ECF No. 1-1, and Contact Power's Amended Counterclaim, ECF No. 67, and are assumed true for purposes of this Memorandum and Order.

1

Plaintiff Richard Miller ("Miller") and his company, Power Equipment and Design, LLC ("PED"), brought this action against Defendant Contact Power, Inc. ("Contact Power") alleging Contact Power breached an oral agreement to pay Miller certain commissions. ECF No. 65 at 1. Contact Power was the sales-and-marketing arm of HiReli, LLC ("HiReli") and its managing member, William Krause ("Krause") (together with Ellen Barag, the "Nonparties"). Id. In turn, HiReli was the sales representative in the New Jersey/New York metropolitan area for G&W Electric, a global supplier of electric power gear. Defs.' Br. in Support of Mot. to Enforce Compliance With Confidentiality Order at p.4. n2. Contact Power's services to HiReli included identifying potential customers and sales opportunities for G&W products. ECF No. 65 at 2.

Miller filed suit in Superior Court of New Jersey alleging Contact Power breached an employment agreement pursuant to which he was to receive commission payments for his sales and management efforts. Id. Miller seeks, among other things, compensation related to the sale of G&W products to the utility PSEG Long Island that Contact Power failed to pay to him. Id. After removing this action from Superior Court of New Jersey in May 2016, Contact Power filed an Answer that included six counterclaims. Id. Specifically, Contact Power alleges Miller, via his access to such confidential Contact Power information as "customer lists, methods of operation, vendor lists, vendor relationships, and pricing information," become aware of the PSEG Long Island project in July 2014. ECF No. 67 at ¶ 9. At some point after July 2014, Miller "terminated his arrangement with Contact Power" in order to transfer this business opportunity to himself and PED. ECF No. 67 at ¶ 9. In this regard, Contact Power asserts that Miller negotiated a direct agreement with HiReli, wherein Miller would receive a lower commission rate than that due to Contact Power for the sale of G&W products. Id. at ¶ 10-13. Contact Power alleges HiReli then

2

terminated its agreement with Contact Power, preventing Contact Power from receiving any revenue from the PSEG sales. Id. at ¶ 13.

In November 2017, Contact Power sought to join HiReli and Krause as third-party defendants pursuant to Fed. R. Civ. P. 14(a)(1). ECF No. 43. This Court denied that motion, though it allowed Contact Power to file an Amended Counterclaim. ECF No. 65. During discovery, Contact Power served HiReli with a subpoena. Defs.' Br. at p.5. In October 2017, the Parties and Nonparties entered a Stipulated Discovery Confidentiality Agreement and Protective Order. ECF No. 36. The language of that Order largely duplicates the form order contained in Appendix S to the Local Civil Rules. Id. The Order creates three tiers of information: that identified as "Confidential" and that designated as "Highly Confidential—Attorneys' Eyes Only," with the remainder being undesignated discovery. "Confidential" means discoverable material that "(a) that contains trade secrets, competitively sensitive technical, marketing, financial, sales or other confidential business information, or (b) that contains private or confidential personal information, or (c) that contains information received in confidence from third parties, of (d) which the Non-Parties otherwise believe in good faith to be entitled to protection under" Fed. R. Civ. P. 26(c)(1)(G) or L.Civ.R. 5.3. Id. "Attorneys' Eyes Only" is defined as any information "that contains highly sensitive business or personal information, the disclosure of which is highly likely to cause significant harm to an individual or to the business or competitive position of the Non-Parties." Id. "Confidential" information may be disclosed only to retained or in-house counsel for the parties and outside experts or consultants retained for the purposes of this action, as well as executives of the parties who are required to participate in decisions with reference to this lawsuit. Id. Material designated "Attorneys' Eyes Only" may be viewed only by retained counsel for the receiving party. Id.

The Nonparties say they produced documents pursuant to the Confidentiality Order in September 2017. Nonparties' Br. in Opp. to Mot. at p.1. Defendants say HiReli produced roughly 700 documents in October 2017. Defs.' Br. at p.5. In any event, by letter dated February 14, 2018, Defendants objected to the Nonparties' designations for much of that discovery. ECF No. 70-2 at p.36. By Defendants' count, 91% of those documents were designated as either "Confidential" or "Attorneys' Eyes Only," while 77% of the 3,092 pages of that discovery was labeled "Attorneys' Eyes Only." Defs.' Br. at p.5. In that letter, Defendants said they believed documents identified on an attached spreadsheet did not meet the Confidentiality Order's standards for those designations, especially those labeled as "Attorneys' Eyes Only." Id. Defendants based their objections in part on the fact that Contact Power was a sales representative of HiReli, not a competitor, and so many of the documents could not fit the criteria for designation as "confidential," let alone "Attorneys' Eyes Only." ECF No. 70-2. In the spreadsheet, Defendants identified document pages by Bates number and stated reason(s) for contesting the "Attorneys' Eyes Only" designation. Id. Many of the objections are pro forma descriptions, reading: "Documents do not meet definition of 'attorneys' eyes only' as they do not contain 'highly sensitive business or personal information' the disclosure of which is 'highly likely to cause significant harm.' All parties are adequately protected by a confidentiality designation." ECF No. 70-2 at p.38-49. Others include more specific objections, such as the objection for documents identified as having a subject matter "PED commission statements," which states: "PED's commission statements have been produced by plaintiffs with no confidentiality designation." Id. at p.38. Similarly, the objection for documents labeled as subject matter "Terms and conditions," is: "G&W's standard terms and commissions are provided to all customers and, certainly would have been provided to CPI as its sales agent." Id. Defendants

4

state that they raised this issue "because of the inability of counsel and expert to discuss relevant damage documents with Contact Power in connection with Contact Power's damage evaluation and liability report" for this litigation. Defs.' Br. at pp.5-6. Defendants say HiReli "responded that the time to challenge the designations under the Confidentiality Order had expired" and so the Nonparties "would not discuss reclassifying the documents." Defs.' Br. at p.6 (*citing* Certification of Christine F. Marks at ECF No. 70-2, Exhibit D).

The Nonparties contend Defendants' motivation for filing the instant motion to reclassify the documents is to give David Rodriguez, Contact Power's principal and HiReli's direct competitor, "access to these highly proprietary and sensitive business documents to allegedly assist CPI's export to prepare" a report that actually was produced to Plaintiffs in July 2018. Nonparties' Br. at p.1.

In June 2018, Defendants filed the instant motion seeking to "modify the designation of these documents from 'Attorneys' Eyes Only' to 'Confidential.'" Defs.' Br. at p.3. Defendants and the Nonparties tangentially each also argue that they should receive an award of attorneys' fees incurred in connection with the motion. Defs.' Br. at p.3, Nonparties' Br. at p.1, n3.

II. **LEGAL STANDARD**

Federal Rule of Civil Procedure 26(c)(1) permits "[a] party or any person from whom discovery is sought...[to] move for a protective order" and authorizes the Court to enter such an order "to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." Fed. R. Civ. P. 26(c)(1). The Local Civil Rules allow parties to "enter into written agreements to keep materials produced in discovery confidential." L.Civ.R. 5.3(b). Rule 5.3 also provides that "[a]ny dispute regarding the entry of an order or the confidentiality of discovery materials under any order, under this section shall be brought before a magistrate judge pursuant to L.Civ.R. 37.1(a)(1)." Id. The Court notes also that "District Courts retain the power to modify

5

or vacate confidentiality orders that [they have] entered" and "when a party seeks to modify an order of confidentiality, the party must come forward with a reason to modify the order." Charlie H. v. Whitman, 213 F.R.D. 240, 245 (D.N.J.2003); *see also* Pansy v. Borough of Stroudsburg, 23 F.3d 772, 784–85, 790 (3d Cir.1994).

"[W]here there is an umbrella protective order[,] the burden of justifying the confidentiality of each and every document sought to be covered by a protective order remains on the party seeking the protective order." United States v. Wecht, 484 F.3d 194, 211 (3d Cir.2007); *see also* Cipollone v. Liggett Group, Inc., 785 F.2d 1108, 1122 (3d Cir.1986). However, this "does not mean...that the party seeking the protective order must necessarily demonstrate to the court in the first instance on a document-by-document basis that each item should be protected." Cipollone, 785 F.2d at 1122. "After the documents delivered under this umbrella order, the [receiving] party could indicate precisely which documents it believed not to be confidential, and the [producing party] would have the burden of proof in justifying the protective order with respect to those documents." Id.

**III. DISCUSSION**

The instant motion primarily is concerned with documents designated as "Attorneys' Eyes Only," which may be disclosed only to counsel for Contact Power, but also with documents designated as "Confidential," which may be disclosed to, among others, any executive of Contact Power "who is required to participate in decisions with reference to this lawsuit."

Defendants say 77% of the 3,092 pages of discovery materials produced by the Nonparties have been designated as "Attorneys' Eyes Only."[2] Defs.' Br. at pp.1-2. Defendants

---

[2] In their reply brief in support of the motion, Defendants state that Nonparties designated "approximately 70% of its production as "Highly Confidential – Outside Attorneys' Eyes Only." Defs.' Reply Br. at p.1. Whether the figure is 70% or 77% does not affect the Court's reasoning.

6

contend this represents an "absurdly high" percentage of documents designated with what is supposed to be the highest tier of confidentiality and essentially accuse the Nonparties of discovery abuse. Defs.' Br. at p.8 (citing Team Play, Inc. v. Boyer, 2005 WL256476 (N.D.Ill. Jan. 31, 2005) (where the producing party marked 4173 document pages out of roughly 6,000 pages produced, or roughly 70%, as "Attorneys' Eyes Only.")). Rather, Defendants say, this tier is intended for "a small discrete group" of documents and "is to be used sparingly." Id. (*quoting* THK America, Inc. v. NSK Co. Ltd., 157 F.R.D. 637, 641 (N.D.Ill. 1991).

More specifically, Defendants point to, among other documents, discovery related to PSEG Long Island and other utilities mentioned as public-sector utilities. Id. at 10. Because they are public-sector utilities, Defendants say, once projects or contracts are awarded documents associated with those projects or sales typically are available to the public via Freedom of Information Act or New York's Freedom of Information Law requests. Id. (*citing* Empire Golf Management, LLC v. Olivieri, 794 N.Y.S.2d 649 (2005) ("once submission process had ended, proposals were no longer 'competitively sensitive.'")) As a result, Defendants contend, such documents ought not be considered "Confidential" at all, let alone "Attorneys' Eyes Only" once, as here, the projects have been awarded. Id. Defendants argue that even if some of these documents constitute FOIA or FOIL exceptions, such as documents containing "trade secrets," such documents still would merit only "Confidential" designations, not "Attorneys' Eyes Only." Id. at 12.

Finally, Defendants contend that the remaining, nonpublic-utility documents designated as "Attorneys' Eyes Only" are, at best, "Confidential" documents and are protected sufficiently by the terms of the Confidentiality Order. Id. at 13.

In opposition, the Nonparties dispute first the percentage of "Attorneys' Eyes Only," designated discovery, instead putting the figure at 60.7% of documents. Nonparties' Br. at p.1. The Nonparties further contend the documents are correctly designated because they contain "highly proprietary commercial information, including, *inter alia*, schematics, drawings, pricing information, sales information, customer information, marketing strategy and other product information" of the kind that is "highly likely to cause significant harm" to HiReli and/or G&W and G&W's customers. Nonparties' Br. at 2. The Nonparties aver that the confidentiality designations were made in good faith, reflecting in part the fact that Contact Power's electrical wholesaling activities directly compete with HiReli's entire product line. Id. The Nonparties point out that Contact Power admitted this in the proposed Third-Party Complaint that Contact Power sought to bring against the Nonparties. Id.; *see also* ECF No. 43-1 at p.37, ¶¶ 26-28 ("As a result, Krause is unfairly competing with Contact Power in the electrical distribution marketplace."). The Nonparties further contend that redesignating the "Attorneys' Eyes Only" material as only "Confidential" would breach nondisclosure agreements between HiReli and G&W and between G&W and its customers, such as PSEG Long Island and Consolidated Edison, that require HiReli to treat that information as strictly confidential. Id. Finally, the Nonparties contend that Contract Power's motion was filed out of time and that it is moot. Id. at p.3. Arguably it is out of time because, according to the Confidentiality Order, any objections to the confidentiality designations were to have been raised in writing within seven days of receipt, but Contract Power did not send its objection letter to the Nonparties until February 14, 2018, as much as six months after the Nonparties' asserted date of production or as little as four months after Contact Power's stated timing of production. ECF No. 36 at ¶ 8(a); Defs.' Feb. 14, 2018 Letter at ECF No. 70-2. As a result, the Nonparties contend, Contact Power waived its right to

object. Nonparties' Br. at p.3 n.5. The motion is moot, the Nonparties say, because Contract Power says the redesignation of documents is needed to enable its experts to do a proper damage estimate and finalize a liability report, but that report was produced to Plaintiffs on or about July 17, 2018. Id.

Several factors "may be considered in evaluating whether 'good cause' exists" to modify a protective order, although they "are neither mandatory nor exhaustive." *Pansy,* 23 F.3d at 787–91. Those factors include:

> (1) whether disclosure will violate any privacy interests;
> (2) whether the information is being sought for a legitimate purpose or for an improper purpose;
> (3) whether disclosure of the information will cause a party embarrassment;
> (4) whether confidentiality is being sought over information important to public health and safety;
> (5) whether the sharing of information among litigants will promote fairness and efficiency;
> (6) whether a party benefitting from the order of confidentiality is a public entity or official; and
> (7) whether the case involves issues important to the public.
> *see* Pansy, 23 F.3d at 787–91.

The Pansy factors are not strictly applicable to this Motion, as Pansy concerned defendants seeking to modify or vacate the terms of an Order of Confidentiality, rather than, as here, to enforce those terms. Indeed, several prongs are not relevant at all. For instance, there is no indication that the confidentiality Defendants seek to enforce is important to public health and safety, nor do Defendants contend the redesignation of documents will promote fairness and efficiency "among the litigants." Also, the employee-compensation dispute at the center of the instant lawsuit is not litigation that involves issues important to the public as contemplated by Pansy. Still, the Pansy factors generally inform this Court's assessments of Defendants' motion.

The Court begins by noting that Contact Power is in a somewhat tenuous position to seek to enforce the terms of a Confidentiality Order it also has failed to observe fully. Pursuant to the Confidentiality Order, objections to confidentiality designations were to be communicated to the producing party within seven days after receipt of the documents. ECF No. 36 at ¶ 8(a). Here, Contact Power did not raise its objections with the Nonparties until February 2018, four-to-six months after it received the documents. ECF No. 70-2, Exhibit A. That said, while the Confidentiality Order expressly voids confidentiality designations that the producing party does not defend within 14 days of receipt of an objecting letter, the Order is silent about consequences for untimely objections. ECF No. 36 at ¶ 8(a) ("If no timely written response is made to the objection, the challenged designation will be deemed to be void. If the designated party or nonparty makes a timely response to such objection asserting the propriety of the designation, counsel shall then confer in good faith in an effort to resolve the dispute."). Considering the language of the Order itself and the extensive amount of discovery to be reviewed, the Court is not persuaded Contact Power waived it rights with a late objection letter, a position the Court signaled to the Parties and Nonparties in conference.[3] ECF No. 37.

The Court finds as an initial matter that the Nonparties' designation of documents that Defendants identified in the spreadsheet with specific objections—such as the PED documents referred to above, about which Defendants state they had received the same documents from the Plaintiffs with no confidentiality designation, or the G&W documents that Defendants stated

---

[3] The Nonparties also argue that "CPI's counsel is already on record before this court in another case...agreeing with HiReli's position that CPI has waived its right to challenge HiReli's confidentiality designations." Nonparties' Br. at p.3,n.5 (*citing* eCube Solutions, LLC v. Universal Master Products Limited, 2011 WL 13151978 (D.N.J. Dec. 5, 2011)). While the Court already has stated that it disagrees with the Nonparties' reading of the Confidentiality Order, it notes that the position of counsel in the eCube matter was that defendants there had waived their right to challenge because defendants had raised no objections after receiving the discovery marked "confidential," not, as here, because defendants raised untimely objections. The Court also is unaware of any rule, statute or jurisprudence holding that counsel's position in one case and one set of facts is binding on that same counsel in a separate matter, a different set of facts and while representing a different client.

would have been provided to Contact Power—are so designated in violation of the Confidentiality Order. Pursuant to the Confidentiality Order, "[n]o information that is in the public domain or which is already known by the receiving party through proper means or which is or becomes available to a party from a source other than the Non-parties asserting confidentiality…shall be deemed or considered to be Confidential material under this Discovery Confidentiality Order." ECF No. 36 at ¶ 13. Thus, where Defendants have obtained such documents from other sources, confidentiality designations made by Nonparties are void.

As to the remaining documents, Nonparties argue that Defendants' Motion rests "solely on CPI's bald assertion that the AEO designations are purportedly improper…." Nonparties' Br. at p.1. The Court begins by noting that "where there is an umbrella protective order[,] the burden of justifying the confidentiality of each and every document sought to be covered by a protective order remains on the party seeking the protective order." United States v. Wecht, 484 F.3d 194, 211 (3d Cir.2007); *see also* Cipollone, 785 F.2d at 1122. Here, once the receiving party has indicated precisely which documents it does not believe should carry a "Confidential" or "Attorneys' Eyes Only" designation, the burden shifts to the producing party to "justify[] the protective order with respect to those documents." Id. As the Third Circuit has stated, "[b]road allegations of harm, unsubstantiated by specific examples or articulated reasoning, do not satisfy the Rule 26(c) test." Cipollone, 785 F.2d 1121; *see also* United States v. Garrett, 571 F.2d 1323, 1326, n. 3 (5th Cir.1978) (requiring "a particular and specific demonstration of fact as distinguished from stereotyped and conclusory statements"); General Dynamics Corp. v. Selb Mfg. Corp., 481 F.2d 1204, 1212 (8th Cir.1973), *cert. denied,* 414 U.S. 1162, 94 S.Ct. 926, 39 L.Ed.2d 116 (1974); 8 C. Wright & A. Miller, *Federal Practice and Procedure* § 2035 (1970 & Supp.1985).

Before even considering the Pansy factors, the Court finds that Defendants have not made "bald assertions" in support either of their Motion or of Confidentiality objections. Rather, the Court finds that Defendants have precisely identified documents by Bates numbers and subject matter in a spreadsheet sent to Nonparties they contend were improperly designated pursuant to the Confidentiality Order. The spreadsheet included some pro forma objections, but also many specific objections. In so doing, the Court finds, Defendants met their initial burden both to "describe with particularity the documents" for which it questions the confidentiality designations and to "state the grounds for objection." In contrast, the Court finds that Nonparties have not come close to meeting the Rule 26(c) burden of defending their designations for those documents identified by Defendants. Instead, Nonparties raise exactly what Cipollone warns against, "broad allegations of harm, unsubstantiated by specific examples."

For instance, in response to Defendants' February 2018 objection letter, Nonparties rested solely on the procedural argument that the objections weren't timely served. See ECF No. 70-2, Exhibit D ("Thus, under the Confidentiality Order, [Defendants] waived [their] right to object…For that reason alone, HiReli will not change its confidentiality designations."). Nonparties refused to defend their classifications in the face of Defendants' substantive objections.

Similarly, in objecting to the instant motion, Nonparties raised unspecified concerns about the possibility that redesignating documents might result in the disclosure of information it considers "Highly Confidential" and that this information could be used for improper purposes. Nonparties' Br. at p.12. The Court notes that the Confidentiality Order provides that documents "received in confidence from third parties" could be designated as "Confidential." ECF No. 36 at ¶ 1(3). The Order reserves the "Attorneys' Eyes Only" designation only for "highly sensitive

business or personal information, the disclosure of which is highly likely to cause significant harm to an individual or to the business or competitive position of the Non-parties." Id. at ¶ 2. Nonparties have not provided specific reasons for why such third-party documents that the Confidentiality Order associates with a "Confidential" designation should instead be designated as "Attorneys' Eyes Only" beyond stating that it is bound by nondisclosure agreements. The Court is unpersuaded, if only because at issue here are the confidentiality designations of documents, including documents received from third parties, that the Nonparties already have produced. Absent some specific reason from Nonparties, the Court does not see how reclassification of the confidentiality level of those documents would violate any nondisclosure agreements to any greater extent. Second, in raising a concern about the potential violation of any nondisclosure agreements Nonparties have again expressed precisely what Cipollone warns against, "broad allegations of harm, unsubstantiated by specific examples." Nonparties have not defined in any detail what "significant harm" means. Rather, they provided various clauses from nondisclosure agreements that also contain broad allegations of harm. *See e.g.,* Nonparties' Br. at pp.8-11 (For instance, G&W/Con Edison agreement states that the amount of the so-called irreparable harm "*may be difficult to ascertain…*") (*emphasis added*)). Reliance upon the language of these agreements does not, in the Court's eyes, constitute specific examples of harm as contemplated by Cipollone. Similarly, Nonparties do not explain why such harm is not just likely, but highly likely when considering the wording of the clauses provided. *See, e.g.,* Id. (For instance, that same G&W/Con Edison agreement reads, in relevant part: "The parties acknowledge that disclosure or misuse of CONFIDENTIAL INFORMATION by the RECEIVING PARTY *may* result in irreparable harm to CON EDISON…." (*emphasis added*)).

13

Furthermore, the Confidentiality Order, while the product of an agreement among the Parties and Nonparties, represents an Order issued by this Court. This Confidentiality Order expressly provides that information produced pursuant to the agreement is to be used "solely for the purposes of the prosecution or defense of this action, shall not be used by the receiving party for any business, commercial, competitive, personal or other purpose, and shall not be disclosed by the receiving party to anyone other than those set forth." Regardless of that protective language, Nonparties allege "irreparable harm will undoubtedly occur" if Mr. Rodriguez, Contact Power's principal, gets access to redesignated documents and "uses that information to CPI's competitive advantage." Nonparties' Br. at p.12. Again, Nonparties do not state how this harm will arise nor what form this harm may take. Furthermore, the Court notes that the Nonparties' basis for such statement is that "Rodriguez has already demonstrated he is not trustworthy," an assertion for which they rely only on the unproven allegations comprising the instant Complaint.

Nonparties further contend that the Motion is moot because Defendants' stated reason for requiring the redesignation of documents was for the compilation of an expert's damages report, though that report was delivered to Plaintiffs in July 2018. Defendants say the improper designation of these documents hindered the ability of its counsel and experts to "discuss relevant damage documents with Contact Power in connection with Contact Power's damage evaluation and liability report." Defs.' Br. at pp. 5-6. And while Defendants acknowledge a liability report was produced to Plaintiffs in July 2018, they say this was done in order to meet the Court's scheduling Order. Defs.' Reply Br. at p.4. In the June 2018 Brief in Support of this Motion, Defendants argued that the confidentiality issue hindered the ability of their counsel or expert "to discuss the documents with Contact Power to formulate a proper damage analysis and

to finalize a liability report." Defs.' Br. at p.6. Defendants also point out that the issue is not moot because "Attorneys' Eyes Only" documents used in the liability report "necessarily will be used at trial." Defs. Reply Br. at 4. Thus, the issue still is ripe.

The Court is cognizant of the fact that redesignation of documents may place some burden of time and expense on Nonparties to review and re-designate previously produced discovery. This is a not-insignificant concern here because the Nonparties are, of course, not parties to this litigation. Yet the Court can only conclude the Nonparties have brought that burden on themselves by designating such a high percentage of documents produced in discovery as "Attorneys' Eyes Only," the highest tier of confidentiality, and then failing to defend those designations adequately in opposing the instant Motion.

Additionally, this Court is aware, as the Nonparties point out, that it has elsewhere held that the "fact that [a party] has designated a significant percentage of their documents 'Highly Confidential-[]' is, in and of itself, an insufficient basis to warrant modification of the Confidentiality Order." Eisai Inc. v. Sanofi-Aventis U.S., LLC, No. CIV.A. 08-4168 MLC, 2012 WL 1299701, at *10 (D.N.J. Apr. 16, 2012). Still, the designation of such a high percentage of documents as "Attorneys' Eyes Only," coupled with Nonparties' failure to carry the burden of defending those designations, leads the Court to grant Defendants' Motion to Enforce the Confidentiality Agreement.

III. **ATTORNEY'S FEES**

Defendants and Nonparties also request that this Court award reasonable attorneys' fees incurred in connection with this motion. Defendants make their request pursuant to Fed.R.Civ.P. 37(a)(4), see Defs.' Br. at p.3, while Nonparties argue that the motion is frivolous, because the expert report requiring the reclassification of documents already has been produced, and thus an award of attorneys' fees is proper. Nonparties' Br. at p.1, n3 (citing Eastern Maico Distributors,

15

Inc. v. Maico-Fahrzengfabrik, G.m.b.H., 658 F.2d 944 (3d Cir. 1981) ("the potential or actual imposition of expenses is virtually the sole formal sanction in the rules to deter a party from pressing to a court hearing frivolous requests for or objections to discovery.")).

Fed. R. Civ. P. 37 and the Court's inherent powers provide authority for a court to impose sanctions in the form of an award of attorney's fees and costs. Under Rule 37, when a motion to compel is denied, the Court "must, after giving an opportunity to be heard, require the movant, the attorney filing the motion, or both to pay the party or deponent who opposed the motion its reasonable expenses incurred in opposing the motion, including attorney's fees." Fed. R. Civ. P. 37(a)(5)(B). However, the Court "must not order this payment if the motion was substantially justified or other circumstances make an award of expenses unjust." Id.

Substantial justification requires justification "to a degree that could satisfy a reasonable person." Bosire v. Passaic County, No. 12–6498, 2017 WL 4532157, at *2 (D.N.J. Oct. 10, 2017) (citing Pierce v. Underwood, 487 U.S. 552, 565 (1988); Grider v. Keystone Health Plan Cent., Inc., 580 F.3d 119, 140, n.23 (3d Cir. 2009)). The test of substantial justification is satisfied if there is a "genuine dispute, or if reasonable people could differ as to [the appropriateness of the contested action]," Pierce, 487 U.S. at 565 (alteration in original, citations omitted).

Though Rule 37 on its face applies only to the denial of a motion to compel discovery, *see* Rule 37(a)(5)(B), there have been cases in which courts have applied Rule 37(a)(5)(B) in the context of a motion to compel compliance with a third-party subpoena under Rule 45. *See, e.g.,* Sonoma Cty. Ass'n of Retired Employees v. Sonoma Cty., No. 15–191, 2015 WL 10767718, at *1 (S.D.N.Y. Oct. 6, 2015).

Nevertheless, the Court need not resolve the issue of whether Rule 37(a)(5)(B) is applicable here because, even assuming the Rule does apply, the Court finds sanctions are not warranted. As discussed above, Defendants' arguments were that the documents needed to be reclassified because they did not fit the criteria of the Stipulated Confidentiality Order, while Nonparties argued that the information, as "highly proprietary and sensitive business documents," ought not to be shared with a direct competitor and that Defendants other stated reason for reclassification, to enable the compilation of their expert's damages report, was moot because the report was produced to Plaintiff's counsel in July 2018. That the Court ruled against Nonparties on those points does not mean, ergo, that Nonparties raised frivolous or unjustifiable defenses. On the other side, that the Court has concluded that Nonparties did not carry their burden of defending their confidentiality designations does not mean, ergo, that Nonparties raised frivolous arguments or abused the discovery process. Thus, the Court finds that under the facts presented here no award of sanctions is appropriate.

## IV. CONCLUSION AND ORDER

Having considered the papers submitted pursuant to Federal Rule of Civil Procedure 78 and for the reasons set forth above;

**IT IS** on this of 6th day of December 2018,

**ORDERED** that Defendants' Motion to Enforce Compliance with Confidentiality Order [ECF No. 70] is **GRANTED**; and it is

**FURTHER ORDERED** that documents designated as "Highly Confidential – Outside Attorneys' Eyes Only" by nonparties HiReli LLC, William Krause and Ellen Barag shall hereby be deemed redesigned as "Confidential" pursuant to the terms of the Stipulated Discovery Confidentiality Agreement and Protective Order; and it is

**FURTHER ORDERED** that the applications of both Defendants and Nonparties for attorneys' fees and expenses incurred in connection with this motion and redesignation are hereby **DENIED**.

>s/ Douglas E. Arpert
>DOUGLAS E. ARPERT
>UNITED STATES MAGISTRATE JUDGE