UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

RICHARD MILLER, et al.,

    *Plaintiffs*,

v.

DAVID RODRIGUEZ, et al.,

    *Defendants*.

Civil Action No. 3:16-cv-02744-PGS-DEA

**Memorandum and Order**

**Sheridan, U.S.D.J.**

Presently before the Court is Defendants' Motion for Reconsideration. (ECF No. 99). This Court heard oral argument on February 6, 2020. This case concerns the breach of an alleged oral contract. In its present motion, Defendants argue that, in the summary judgment decision (ECF No. 98), the Court overlooked the undisputed facts regarding the individual liability of Defendants David Rodriguez and JoEllen Rodriguez, and therefore request that the Court dismiss Plaintiff's claims against them. For the reasons explained below, Defendants' motion is denied.

I.

While the Federal Rules of Civil Procedure do not expressly authorize them, "motions for reconsideration are proper pursuant to this District's Local Civil Rule 7.1(i)." *Rich v. State*, 294 F. Supp.3d 266, 272 (D.N.J. 2018) (citation omitted). Under Local Rule 7.1, a party may brief issues which the party believes a District Court Judge has "overlooked." L. Civ. R. 7.1(i).

Nevertheless, "reconsideration is an extraordinary remedy that is granted 'very sparingly.'" *Id*. (citations omitted); *see also A.K. Stamping Co., Inc., v. Instrument Specialties Co., Inc.*, 106 F. Supp. 2d 627, 662 (D.N.J. 2000); *NL Indus., Inc., v. Commercial Union Ins. Co.*, 935 F. Supp.

1

513, 516 (D.N.J. 1996). Generally, motions for reconsideration will only be granted where (1) an intervening change in the law has occurred, (2) new evidence not previously available has emerged, or (3) the need to correct a clear error of law or prevent a manifest injustice arises. *See North River Ins. Co. v. CIGNA Reinsurance Co.*, 52 F.3d 1194, 1218 (3d Cir. 1995). Because reconsideration of a judgment after its entry is an extraordinary remedy, requests pursuant to these rules are to be granted only when "dispositive factual matters or controlling decisions of law" were brought to the Court's attention but not considered. *Pelham v. United States*, 661 F. Supp. 1063, 1065 (D.N.J. 1987); *see G-69 v. Degnan*, 748 F. Supp. 274, 275 (D.N.J. 1990).

"Reconsideration motions, however, may not be used to relitigate old matters, nor to raise arguments or present evidence that could have been raised prior to the entry of judgment." *NL Indus., Inc.*, 935 F. Supp. at 516; *see* Wright, Miller & Kane, Fed. Practice and Procedure: Civil 2d § 2810.1. "There is a strong policy against entertaining reconsideration motions based on evidence that was readily available at the time that the original motion was heard; and so, the court may, in its discretion, refuse to consider such evidence." *Damiano v. Sony Music Entm't, Inc.*, 975 F. Supp. 623, 634 (D.N.J. 1997) (citation omitted). A "[m]ere disagreement with the Court's decision does not suffice." *Rich*, 294 F. Supp.3d at 273 (citation omitted).

II.

Plaintiff Richard Miller and his company, Power Equipment and Design, LLC ("PED"), brought this action against Defendants Contact Power, Inc. ("Contact Power"), and David Rodriguez, and JoEllen Rodriguez, owners of Contact Power (collectively, "Defendants"), alleging that Contact Power and/or David and JoEllen Rodriguez failed to pay Miller commissions for a period of time while he worked as an independent contractor or as an employee for Contact Power between July 1, 2015, until October 15, 2015. (Compl. ¶¶ 2-4, ECF No. 1).

On this motion for reconsideration, counsel for David and JoEllen Rodriguez argues that there are six undisputed statements of material fact which mandate that summary judgment be granted to David and JoEllen Rodriguez because all of their acts were on behalf of Contact Power, a corporate entity. The undisputed facts are the following:

1. According to Miller, his oral agreement was with the corporation, Contact Power;

2. Miller understood that the written contract that he was negotiating was between PED and Contact Power with himself and Rodrigues [sic] being the "representatives of those entities;"

3. According to Miller, JoEllen made no promises to him;

4. Miller understood that any oral promise would be with Contact Power, not David [Rodriguez], individually;

5. Miller also understands that any legal agreement is between the entities; and

6. The parties were intended to be PED and Contact Power.

(DSOMF ¶¶ 55-60, ECF No. 79-1).

While it is true that these six undisputed facts may support summary judgment for the Rodriguezes on an individual basis, Plaintiff contends that there are documents that demonstrate a purposeful, but tacit, intent to defraud him, and which undermine the corporate entity theory. Most notably, Plaintiff had an ongoing employment relationship with Contact Power and David and JoEllen Rodriguez from at least January 1, 2015, through June 30, 2015, memorialized in a Letter of Understanding (LOU) dated April 16, 2015. (Ex. T to Flaum Cert., ECF No. 78-25). Although the LOU had terms for payment of a commission from January 1, 2015, to June 30, 2015, it lacked the formality of a written contract, and was simply initialed for the parties. The LOU is not on corporate letterhead, and there is no showing the Rodriguezes initialed in in their corporate capacity. (*See id.*).

In June, 2015, in anticipation of reaching an agreement as an independent contractor working on a commission basis to Contact Power and the Rodriguezes, Miller wrote:

> **From:** Rick Miller
> **Sent:** Monday, June 15, 2015 1:34 PM
> **To:** david.rodriguez@contactpower.net; sales@contact_power.net
> **Cc:** dom.gatto@contactpower.net
> **Subject:** Business Agreement
>
> Dear Dave & Jo,
> I was hoping by now to have had a formal agreement in place between us for the second half of 2015. Since no agreement has been formalized I want to make sure there are no misunderstandings about my intentions moving forward. Forgive the formality, but these are important matters.
>
> As I mentioned on several occasions I believe we can come to terms on a fair and equitable business relationship structured in such a way that I will be self-employed and Contact Power will pay my company for services on a contract or commission basis.
>
> With that in mind, my direct employment with Contact Power will terminate effective June 30, 2015. Beginning July 1st all payments to me should be made to Power Equipment and Design, LLC, the new business entity Bev and I established.
>
> By far the most significant revenue I generate for CPI is from First Solar business. I would expect that all First Solar business remain with CPI and we maintain the same margin split as we agreed upon for the first half of 2015. All other details of our agreement still need to be worked out. The agreement I'm looking for is the one you would want if you were in my shoes. I look forward to receiving your proposed agreement prior to June 30th.
>
> Regards,
> Rick

(Ex. T to Flaum Cert). As best the Court can tell, Contact Power and the Rodriguezes never responded to this e-mail; but, it is noteworthy that the e-mail does not further describe the relationship among the parties, and there is no acknowledgment in what capacity (personal or corporate) the Rodriguezes were acting.

About two weeks later (June 28, 2015), Miller e-mailed the Rodriguezes again regarding the commissions owed. Miller wrote:

> **From:**      Rick Miller
> **Sent:**      Sunday, June 28, 2015 10:26 PM
> **To:**        david.rodriguez@contactpower.net; sales@contactpower.net

4

**Cc:** dom.gatto@contactpower.net
**Subject:** RE: Business Agreement
**Attachments:** Letter of Understanding

Dave & Jo,
In line with our meeting last January and the letter of understanding signed in April (copy attached) I expect payment of my commissions earned during the period January thru June 2015 to be paid on June 30th.

Please deduct $9000 to fully fund my standard 401K and $3000 for my 401K catch-up, along with federal and state withholding percentages used for my monthly draws.
Thanks,
Rick

(Ex. T to Flaum Cert.). The next day, JoEllen Rodriguez confirmed the calculation of Miller's commission of nearly $500,000.00, and she wrote:

Good Afternoon Rick,

Please find below, the calculations for bonus payout as per your bonus calculator outlined in our agreement. Amazing first 6 months Rick. Thank you for your dedication and commitment to Contact Power. I'm happy to know that this will buy you and Bev a few rounds of golf..... ☺ We have called this into ADP and the check will be issued as a live check, with the $9,000 401K and $3,000 401K Catch up deducted as requested, dated June 30, 2015. We will send the check to you as soon as we receive it tomorrow!

Again, thank you!

(E-mail, Ex. M. to Flaum Cert., ECF No. 78-18).

Importantly, JoEllen's e-mail is upbeat and thanks Miller for his "dedication and commitment to Contact Power;" but the e-mail does not mention any agreement or relationship after June 30, 2015. (*See id.*). In addition, JoEllen testified that at a January 2015 meeting where she, David, and Miller were present, there was a discussion about Miller's post-June 2015 employment status and that she believed Miller's employment status after June 30, 2015, "would be determined." (Deposition of JoEllen Rodriguez 33:3-7, Aug. 3, 2017, Ex. D to Flaum Cert., ECF No. 78-9).

Miller argues that the LOU, the commission memo, and JoEllen's statements are circumstantial evidence from which a jury could find that the Rodriguezes and Contact Power were

5

intentionally leading on Miller to generate more business after June 30, 2015, even though the Rodriguezes had decided that they knew they would not pay him. These issues also leave open the question of whether the Rodriguezes were acting outside the scope of their corporate authority.

As explained below, there are genuine factual disputes concerning the Rodríguezes' liability, which warrant against granting summary judgment. Accordingly, Defendants' present reconsideration motion must be denied.

III.

1. <u>Counts I, II, and IV – Breach of Contract, Duty of Good Faith and Fair Dealing, and Implied Contract</u>

Under New Jersey law, to establish a breach of contract claim, a plaintiff must prove (1) the parties entered into a valid contract; (2) the plaintiff performed under the contract; (3) the defendant breached the contract; and (4) the defendant's breach caused damages to the plaintiff. *Accurate Abstracts, LLC v. Havas Edge, LLC*, Civ. No. 14-1994 (KM) (MAH), 2018 U.S. Dist. LEXIS 178756, at *12 (D.N.J. Oct. 16, 2018) (citing *Globe Motor Co. v. Igdalev*, 225 N.J. 469, 482 (2016)). Every contract in New Jersey contains an implied covenant of good faith and fair dealing which mandates that "neither party shall do anything which will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract." *Wood v. New Jersey Mfrs. Ins. Co.*, 206 N.J. 562, 577 (2011) (citation and internal quotation marks omitted).

Moreover, an implied-in-fact contract arises from mutual agreement and intent to promise, but in circumstances in which the agreement and promise have not been verbally expressed and thus agreement is inferred from the conduct of the parties. *Baer v. Chase*, 392 F.3d 609, 616 (3d Cir. 2004); *St. Barnabas Medical Ctr. v. County of Essex*, 111 N.J. 67, 77 (1988).

Here, based on the ongoing employment relationship between the parties up until October 2015, there are sufficient facts from which a jury could find circumstantial evidence that a contract existed. Therefore, Counts I, II, and IV will proceed.

2. Count III – Quasi Contract/Quantum Meruit

To recover under a quantum meruit theory, a plaintiff must establish: (1) the performance of services in good faith, (2) the acceptance of the services by the person to whom they were rendered, (3) an expectation of compensation therefor, and (4) the reasonable value of the services. *Read v. Profeta*, 397 F. Supp. 3d 597, 643 (D.N.J. 2019); *Starkey v. Estate of Nicolaysen*, 172 N.J. 60, 68 (2002). To state claim under the quasi-contractual theory of quantum meruit, a plaintiff must establish the same four elements. *See Sean Wood, L.L.C. v. Hegarty Group, Inc.*, 422 N.J. Super. 500, 513 (N.J. Super. Ct. App. Div. 2011).

Here, Miller's claims against JoEllen for quasi contract and quantum meruit also survive, because Miller provided sales services after June 30, 2015 without any objection by the Rodriguezes or Contact Power. Accordingly, this presents a jury question of whether Contact Power intended to pay Miller for his services and whether the Rodriguezes are liable for such payments as a result of their inactions.

3. Count V – Unjust Enrichment

A claim for unjust enrichment rests on the equitable principle that one shall not be allowed to be enriched unjustly at the expense of another. *Stewart v. Beam Global Spirits & Wine, Inc.*, 877 F. Supp. 2d 192, 196 (D.N.J. 2012); *VRG Corp. v. GKN Realty Corp.*, 135 N.J. 539, 554 (1994). To establish an unjust enrichment claim, a plaintiff must show that (1) the defendant received a benefit from plaintiff, (2) the plaintiff expected remuneration from the defendant at the time the benefit was conferred on the defendant, (3) the failure of remuneration enriched the

defendant beyond the contractual rights, and (4) to allow the defendant to retain that benefit without payment would be unjust. *Stewart*, 877 F. Supp at 196.

Here, Miller's claim for unjust enrichment survives because a jury could find either that Contact Power or the Rodriguezes received the benefit of Miller's services after June 30, 2015, and that Miller expected to be paid for his services during this period.

4. Counts VI and VII – Misrepresentation and Fraud

A prima facie claim of fraudulent misrepresentation requires "(1) [a] representation; (2) which is material to the transaction at hand; (3) made falsely, with knowledge as to whether it is true or false; (4) with the intention of misleading another party into relying on it; (5) justifiable reliance on the misrepresentation; and (6) the resulting injury was proximately caused by the reliance." *McKowan Lowe & Co., Ltd. v. Jasmine, Ltd.*, Civil No. 94-5522 (RBK); Civil No: 96-2318(RBK), 2005 U.S. Dist. LEXIS 35546, at *14-15 (D.N.J. Dec. 20, 2005); *Richie and Pat Bonvie Stables, Inc. v. Irving*, 350 N.J. Super. 579, 589 (N.J. Super. Ct. App. Div. 2002).

Similarly, a common law fraud claim requires "(1) a material misrepresentation of a presently existing or past fact; (2) knowledge or belief by the defendant of its falsity; (3) an intention that the other person rely on it; (4) reasonable reliance thereon by the other person; and (5) resulting damages." *Johnson v. Draeger Safety Diagnostics, Inc.*, 594 F. App'x 760, 766 (3d Cir. 2014) (quoting *Gennari v. Weichert Co. Realtors*, 148 N.J. 582, 691 (1997)).

Here, a jury could find that the Rodriguezes' omissions with regard to Miller's efforts after June 30, 2015 were fraudulent, and whether they are personally or corporately liable. In short, a jury could find that the Rodriguezes' conduct or omission constituted fraud or misrepresentation.

## ORDER

This matter having come before the Court on Defendants' Motion for Reconsideration (ECF No. 99), and the Court having carefully reviewed and taken into consideration the submissions of the parties, as well as the arguments and exhibits therein presented, and for good cause shown, and for all of the foregoing reasons,

IT IS on this 24th day of March 2020,

**ORDERED** that Defendants' Motion for Reconsideration (ECF No. 99) is **DENIED.** All of Plaintiff's counts will proceed to trial.

_s/Peter G. Sheridan_
PETER G. SHERIDAN, U.S.D.J.
